PEARSON, PEPPARD & CO., INC. *v.* UNITED STATES (No. 3836)[1]

United States Court of Customs and Patent Appeals, April 29, 1935

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Ralph Folks* and *Richard E. FitzGibbon,* special attorneys, of counsel), for the United States.

[Oral argument April 15, 1935, by Mr. Place and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Certain merchandise entered as thirty-three casks of grinding stones, imported from Scotland at the port of New York, were classified by the collector as manufactures of earthy or mineral substances under paragraph 214 of the Tariff Act of 1930. The importer claimed by its protest that the goods were free of duty under paragraph 1692 of said act, which is as follows:

PAR 1692 Hones, whetstones, and grindstones

On the trial below, several witnesses were called and examined as to the character and use of the imported goods, and samples of the same were duly introduced as exhibits. These exhibits are five in number. Exhibit 1, known as yellow stone, is a block, in general form resembling the outer portion of a sector, is rough upon its outer surface, about 10½ inches wide, 14 inches long, and 7½ inches thick. The second exhibit is known as blue stone, and is rectangular in shape, also with a rough surface. It is about 7 inches thick, 9½ inches wide, and 13 inches in length. The three remaining exhibits are as follows: Exhibit 3 is cylindrical, 4 inches in thickness and 7 inches in diameter. One of the flat surfaces has been dressed until it is smooth. The

---

[1] T. D. 47684.

other surfaces are rough. It is not bored for a spindle. Exhibit 4 is rectangular in shape, 5 inches wide, 9¼ inches long, and 2 inches thick. Exhibit 5 is octagonal, approximately 6½ inches wide by 6½ inches long, and is almost three inches thick. In Exhibits 4 and 5 the edges of the stones have been painted red.

There is one other type of stone in the importation which is of the blue variety, about 7 inches square and from 3 to 3½ inches thick. No sample of this variety was introduced.

It appears from the testimony that the imported stones are of a peculiar kind and character, which makes them especially useful for the polishing of copper rolls which are used in printing and textile trades. When so used, it is for the purpose of removing engravings which have been placed upon said copper rolls, and which it is desired to remove so that the rolls can again be used. In order to do this, it is essential that all scratches, irregularities, and the like, be removed from the roll so that when used it will make a perfect reproduction of the design or illustration which it is desired to make.

In order to remove said etchings or engravings from these copper rolls, the roll is placed in the chucks of a lathe, suspended horizontally. The stone which is used for polishing is so suspended, by means of chucks or cement, above the roll that it rests thereon. By means of worm mechanism, the stone with its supporting chuck or mounting, moves backward and forward, resting upon the top surface of the copper roll. Sometimes this stone, which is employed, has, in addition to its horizontal motion, an oscillating motion, and, in the case of the round stones, represented by Exhibit 3, a revolving motion. At the same time, the copper roll is also revolving, so that there are, at times, three motions combining to effect the polishing. In some cases the polishing stone is manipulated by hand. In fact, it has been so stated as to Exhibits 1 and 2. However, on account of the size of these stones, the witnesses must have had in mind the support of the stone in some manner other than by the hands.

The roll is first treated with yellow stone, Exhibit 1, then with the blue stone, Exhibit 2, and then follow, in order, the other stones, each giving a more complete finish to the roll, and even these processes, at times, being supplemented by French emery, charcoal, or bath brick. While the polishing is going on, the rolls are partly immersed in water.

A claim is made in the protest that the goods are alternatively dutiable as not enumerated, unmanufactured or manufactured articles. This claim, however, is not pressed, and the whole controversy is whether the imported goods are, or are not, grindstones. The United States Customs Court overruled the protest on the ground that the importer had not sustained the burden imposed upon it, and from that decision the importer has appealed.

The question of whether these importations are properly classifiable as grindstones, is, we think, determinable by reference to a series of cases heretofore adjudicated by this court. That they are grinding stones cannot be disputed, because they are made and used for grinding or polishing purposes. It was necessary for this court, in the very early case of *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T. D. 32351, to determine what was or was not a grindstone. In the case cited, two stones, one of them round, about 2 feet in diameter, 7 or 8 inches thick, and the other not round, with the size not definitely stated, were held not to be grindstones. These stones were designed to be used together, one stone being placed upon the top of the other and caused to revolve upon a perpendicular axle extending through its center. When so assembled, the stones constituted a grinding mill, and were used for grinding or crushing colors. Judge Barber, expressing the views of the court, held that in the ordinary use of the word, the word grindstone "refers to a solid wheel of stone, mounted on a spindle and turned by a winch handle, by a treadle, or by machinery, used for grinding, sharpening, or polishing." That decision was rendered under the tariff act of August 5, 1909, the particular paragraph involved being 115, which provided for "grindstones, finished or unfinished."

The point was not raised again in this court until in 1929, when, in *United States* v. *Canadian Pacific Railway Co.*, 17 C. C. P. A. (Customs) 238, T. D. 43671, stones were imported, classified as sandstones, and claimed to be dutiable as grindstones, finished or unfinished, under paragraph 236 of the Tariff Act of 1922. These stones were coarse sandstones, cylindrical in shape, with holes through the center to admit of being mounted upon a shaft. These were very large, each having a width of about 27 inches and a diameter of 54 inches, and were used for grinding wood into pulp. In this use, the stones were hung on a shaft at right angles to their diameters, in bearings, and with a casing, and with proper mechanical devices by which wood was fed to the stones and by friction reduced to a pulp. The court was of opinion that the imported stones were grindstones, and came distinctly within the definition above quoted from the *Stouffer* case; that there was no inhibition in what we there said against using grindstones for abrading wood, as well as metals.

Again, in *British American Tobacco Co.* v. *United States*, 17 C. C. P. A. (Customs) 374, T. D. 43812, under the Tariff Act of 1922, grinding stones were imported, which stones were slightly elliptical in shape, measured 8 inches across the top, 5½ inches across the bottom, 12½ inches in length, and 3 inches in thickness. These were parts of machines used to sharpen tobacco cutting knives. In each machine, six of these stones were clamped onto a headstock or holder operated by a shaft and a source of power, which source

of power caused the shaft holder and stones to revolve, thus accomplishing the grinding of the knives.

Here, again, this court reiterated the essential part of the definition which it had given for the word "grindstone" in the *Stouffer* case, and in determining that the imported articles were not grindstones, we said that they were not solid wheels of stone, nor were they flat circular stones so hung that each could be rotated upon an axis. We also observed:

The only point at which they answer the definition of a grindstone is that they are used for grinding, but they are not separately so used, and use alone is not enough to constitute an article a grindstone.

The definition originally given by this court under the said Tariff Act of 1909 has never been reversed by this court, and the statutory language has been retained without material change, so far as this controversy is concerned, through the act of October 3, 1913, the Tariff Act of 1922, and the Tariff Act of 1930. If the construction which this court has given to the word was felt to be not the correct one, it seems quite obvious that changes would have been made in the statutory language in subsequent enactments of this provision.

It is argued that the United States Customs Court held merchandise of the kind here involved to be dutiable as grindstones, under paragraph 236 of the Tariff Act of 1922, in *Pearson, Peppard & Co. Inc.* v. *United States*, T. D. 40976, 47 Treas. Dec. 797, and, on rehearing, reaffirmed that conclusion in Abstract 499, 50 Treas. Dec. 644. This is true. However, we have examined the decisions in those cases, and it seems that the attention of the court was not called to any of the cases which we have hereinbefore discussed, and we assume that it was not appreciated that this court had determined the question involved differently from the views expressed by the United States Customs Court in the case last cited.

The judgment of the United States Customs Court is *affirmed*.

GARRETT, Judge, dissents.